# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **AMOS N. JONES**, |
| Plaintiff, |
| v. |
| **CAMPBELL UNIVERSITY,** *et al.*, |
| Defendants. |

Case No. 18-cv-321 (CRC)

## MEMORANDUM OPINION

Plaintiff Amos Jones is a former professor at Campbell University's Norman Adrian Wiggins School of Law in Raleigh, North Carolina. In December 2017, Jones—now a citizen of the District of Columbia—filed suit in D.C. Superior Court against Campbell and five of its employees—all citizens of North Carolina—alleging violations of federal antidiscrimination statutes and raising tort claims under state law. He also brought two common-law tort claims against the Catholic University of America, located in Washington, D.C.

The crux of Jones's complaint is that Campbell University twice denied him tenure and ultimately fired him in 2017 because he is African-American and as retaliation for exercising his rights under the antidiscrimination laws. He also alleges that the university and its employees breached his employment contract by not properly handling his tenure application and that they defamed him by publishing false accounts of the controversy in emails, on social media, and in the press. As to Catholic University, Jones claims that the school intentionally interfered with

his employment contract with Campbell by disclosing to Campbell that he had applied for a professorship.[1]

Campbell University and three of the individual defendants—John Bradley Creed, Robert C. Cogswell, and Timothy Zinnecker—removed the case to federal court on the ground that it involved federal claims. These defendants then moved to dismiss Jones's claims against them for lack of personal jurisdiction.[2] In their motion, they stated that none of the defendants had contacts with the District of Columbia and that all of the allegedly wrongful acts occurred in North Carolina.

Jones responded with an amended complaint with a new jurisdictional allegation. As he explains in that complaint and in subsequent briefing, defendant J. Richard Leonard—Campbell Law School's dean—was a federal magistrate and bankruptcy judge on the U.S. District Court for the Eastern District of North Carolina for 32 years. And, according to Jones, Leonard "regularly recruits and/or offers North Carolina's federal judges paid teaching jobs at the Law School, frequently fraternizes with these co-workers and colleagues, and is otherwise deeply and personally interested in and cooperative with the jurists serving in the federal courthouses throughout North Carolina." Am. Compl. ¶ 24. Thus, in Jones's view, all federal district judges in the Eastern District of North Carolina—where venue would otherwise be proper—are biased

---

[1] Jones's amended complaint also raises a tort claim against Catholic University for public disclosure of private facts. In opposing Catholic University's motion to dismiss, however, Jones abandons that claim. Pl.'s Opp'n Catholic Mot. Dismiss at 2.

[2] The other two individual defendants—J. Richard Leonard and Susan Thrower—separately moved to dismiss for lack of proper service. In that motion, they indicate an intent to join the pending motion to dismiss for lack of jurisdiction. See Leonard & Thrower Mot. Dismiss at 2 n.1, ECF No. 22. Because Jones offers no reason to believe that the Court has personal jurisdiction over these two individual defendants, the Court will consider the motion as if filed by all six defendants associated with Campbell University.

against or financially interested in his claims against the Campbell defendants, such that they cannot adjudicate those claims. See 28 U.S.C. § 455(a)–(b) (specifying circumstances under which a judge must disqualify himself); Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 876–77 (2009) (explaining that due process requires recusal when the judge "has a direct, personal, substantial, pecuniary interest in a case" or in other circumstances where as an objective matter "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable" (internal quotations omitted)).

The Campbell defendants have again moved to dismiss on the ground that this Court lacks personal jurisdiction over them. The Court will grant their motion. Neither the defendants themselves nor their allegedly wrongful actions have any meaningful connection to the District of Columbia. See D.C. Code §§ 13-422, -423(a)(3)–(4). Jones concedes as much. Pl.'s Opp'n at 16 ("Defendants are correct that this Court may lack personal jurisdiction over the Campbell [U]niversity defendants . . . ."). That concession is a death knell because—without personal jurisdiction or waiver of that requirement—due process prevents this Court from exerting authority over these defendants. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985).

Jones's alternative theory—that bias in another federal district court supports jurisdiction in this one—is completely unfounded. Even if all judges in the Eastern District of North Carolina were subject to mandatory disqualification under 28 U.S.C. § 455 or the Due Process Clause (a dubious proposition), and even if it were proper for this Court to make that determination as to judges on another district court (let alone as to that judicial district as a whole), there is no authority whatsoever suggesting that their disqualification would somehow

3

give this Court the power to hear claims against defendants over which it lacks personal jurisdiction.

The Court could "in the interest of justice" transfer Jones's claims against them to a forum that does have jurisdiction and where venue is proper. 28 U.S.C. § 1406(a); see Katopothis v. Windsor-Mount Joy Mut. Ins. Co., 211 F. Supp. 3d 1, 26–27 (D.D.C. 2016). Jones nominally requests that the Court do so here and suggests the Western District of North Carolina as a possibility. Pl.'s Opp'n Campbell Defs.' Mot. Dismiss at 4–5. (Which raises the question: why not bring the claims there in the first place?) But Jones makes no meaningful argument for why transfer to that district, as opposed to outright dismissal, would be appropriate. Even if he did, the Court would be reluctant to transfer his claims because they so obviously did not belong here in the first place.[3] Rather, pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court will dismiss Counts One through Ten of Jones's amended complaint.

That leaves Count Eleven: a common-law tort claim for contractual interference against Catholic University, which it has moved to dismiss under Rule 12(b)(6). The Court declines to exercise supplemental jurisdiction over this claim because it has dismissed all of the claims over which it has original jurisdiction—i.e., Jones's federal statutory claims against the Campbell defendants. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

---

[3] Whether the asserted jurisdictional hook was so spurious that it warrants sanctions under Federal Rule of Civil Procedure 11 is a separate question—one that the Court will take up in a forthcoming ruling on the defendants' motion for sanctions.

remaining state-law claims."); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.").

The Court will instead remand Count Eleven of Jones's amended complaint to D.C. Superior Court. See Carnegie-Mellon, 484 U.S. at 353 (giving "federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate" and noting a general preference for remand over dismissal). The Court does so reluctantly because, in light of Catholic's arguments in its motion to dismiss, it doubts the viability of Jones's contractual-interference claim on the merits.

A separate order accompanies this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: June 29, 2018